UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT J. DUNIKOWSKI, | ) | Case No.: 1:18 CV 2576 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| OHIO DEPARTMENT OF | ) | |
| REHABILITATION AND | ) | |
| CORRECTION, et al., | ) | |
| | ) | MEMORANDUM OPINION |
| Defendants | ) | AND ORDER |

*Pro se* plaintiff Robert Dunikowski ("Dunikowski") is confined at the Marion Correctional Institution, but the events at issue here took place at the Grafton Correctional Institution. Plaintiff brings this prisoner civil rights action pursuant to 42 U.S.C. § 1983 against defendants: (1) Ohio Department of Rehabilitation and Correction ("ODRC"); (2) Grafton Correctional Institution ("GCI"); (3) ODRC Warden LaShann Eppinger; (4) GCI Assistant Warden Adam Kastler; (5) GCI Unit Manager Administrator Dessie Cheers; (6) GCI Recreation Administrator Eric Gardenhire; (7) GCI Deputy Warden of Operations Jennifer Gillece; (8) GCI Deputy Warden of Special Services Ron Armbruster; and (9) Inspector, Lorain Correctional Tina Grudzien (collectively, "Defendants"). Plaintiff sues Defendants only in their official capacities, alleging that they violated his rights under the United States Constitution with respect to equal protection, due process, and cruel and unusual punishment. (Compl., ECF No. 1).

For the reasons that follow, this case is dismissed.

## I. BACKGROUND

The allegations in the complaint relate to a program at GCI that Plaintiff states he "built" called Life Change for Lifers Charity Workshop ("Workshop"). The complaint and attachments thereto total more than 200 pages, and can be summarized as follows.

Plaintiff alleges that in 2014, with the permission of then GCI Warden Kelly and "DWO" Norm Hills, he used his personal funds and had their permission to "have personal items sent back into the institution" in connection with the Workshop (Compl. at 8). Dunikowski claims that he also had permission to order bulk craft supplies and that two women – Ms. Adler and Ms. Greer – assisted him with respect to bringing supplies into GCI for the Workshop. According to the complaint, this arrangement operated for three years "without incident." (*Id.*). Then, the GCI staff "blamed the group" for drug overdoses inside the prison at Thanksgiving claiming that drugs were brought into the prison in turkey dinners. (*Id*. at 10).

The same theme pervades the lengthy complaint – everything Plaintiff did in connection with the Workshop and other charitable activities at GCI was with the permission of GCI staff, even though there were written policies against use of personal money and property in connection with the Workshop and GCI. (*See id*. at 8.). Plaintiff claims that notwithstanding policy prohibitions, the "inept staff" at GCI erred by permitting him to fund and operate the Workshop, then punished him "after the fact." Indeed, Plaintiff claims that it was GCI's staff that violated State and institutional policies by allowing him to use personal funds and personal property for the Workshop and other events at GCI, and allowing his visitors to bring food and other items into the institution. (*See id*. at 12 ("the only ones to violate any policies, laws, etc. were the staff at Grafton

Correctional")).

When Plaintiff's activities with respect to the Workshop and other charitable events came under scrutiny, he was placed in segregation and transferred to another institution, and outside individuals assisting him were removed from his visitors list. Plaintiff complains that his money and personal property, and that of the individuals assisting him with the Workshop by bringing supplies into GCI, were not returned. Plaintiff alleges the these actions were taken in retaliation and and to harass him because "he was to[o] big for his britches" (*see id*. at 12, 14). Plaintiff seeks reimbursement for the personal money and property he expended in connection with the Workshop and other charitable activities at GCI. (*See id*. at 8-9.).

## II. DISCUSSION

### A. Standard of Review

Although *pro se* pleadings are liberally construed and held to less stringent standards than formal pleadings drafted by lawyers, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the lenient treatment generally accorded *pro se* pleadings "has limits" and *pro se* plaintiffs are "not automatically entitled to take every case to trial." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Pursuant to *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999), a district court may *sua sponte* dismiss a fee-paid complaint for lack of subject matter jurisdiction at any time when the allegations of the complaint are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Sua sponte* dismissal of a fee-paid complaint is appropriate without affording the plaintiff an opportunity to amend where the plaintiff's claims lack the "legal plausibility necessary to invoke federal subject matter jurisdiction." *Id*. at 480. Although Plaintiff has paid the filing fee in this *pro se* case, it is nevertheless subject to *sua sponte* dismissal pursuant

to the criteria of *Apple v. Glenn*.

## B. Analysis

Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983. To allege a civil rights claim under § 1983, Plaintiff must establish that: (1) a person acting under color of state law (2) deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Gomez v. Toledo,* 446 U.S. 635, 640 (1980) (citation omitted).

### 1. Plaintiff's claim against Defendants and the State of Ohio are dismissed

#### *Claims against Defendants*

For a defendant to be liable under § 1983, the defendant must be a "person" for the purpose of § 1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Moreover, the Eleventh Amendment bars § 1983 actions against a State unless the State has waived its immunity or unless Congress exercised its power to override that immunity. *Id*. at 66; *Ernst v. Rising,* 427 F.3d 351, 358-59 (6th Cir. 2005) (states are immune from suit absent waiver of immunity or abrogation of immunity by Congress). In passing § 1983, Congress did not disturb the States' Eleventh Amendment immunity, and the State of Ohio has not waived its immunity from suit in federal court to § 1983 suits for money damages. *Will*, 491 U.S. at 66 (citation omitted); *Lee Testing & Eng'g, Inc. v. Ohio Dep't of Transp.*, 855 F. Supp. 2d 722, 726 (S.D. Ohio 2012) (citing *Turker v. Ohio Dep't. of Rehab. and Corr.,* 157 F.3d 453, 457 (6th Cir. 1998)).

Plaintiff's claim against ODRC is legally implausible and frivolous because, as an agency of the State of Ohio, ODRC is not a person subject to suit under § 1983, and is immune from suit in federal court for money damages. *See Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997) (applying Eleventh Amendment immunity to state agencies and instrumentalities); *Will*, 491 U.S. at 70-71 (a state agency is not a "person" subject to suit under § 1983). Similarly, Plaintiff's claim against GCI is also legally implausible and frivolous because a state prison facility is not a legal entity capable of being sued. *See Moon v. Richland Corr. Inst. Ohio*, No. 1:19 CV 1250, 2019 WL 2359196, at *1 (N.D. Ohio June 4, 2019) (state correctional institution is not a legal entity capable of being sued under § 1983) (collecting cases). Accordingly, Plaintiff's claims against ODRC and GCI are frivolous and lack legal plausibility, thereby divesting the court of federal subject matter jurisdiction. *Apple*, 183 F.3d at 479-80.

Plaintiff's claims against defendants Warden Eppinger, Assistant Warden Kastler, Unit Manager Administrator Cheers, Recreation Administrator Gardenhire, Deputy Warden of Operations Gillece, Deputy Warden of Special Services Armbruster, and Inspector Grudzien are asserted against them only in their official capacities. But state officials acting in their official capacities are not persons under § 1983. *Will*, 491 U.S. at 71. Furthermore, suits for money damages against state officials acting in their official capacity are equivalent to suits against the state and, therefore, the above-listed defendants are immune from suit.[1] *Lee Testing*, 855 F. Supp. 2d at 726 (citations

---

[1] "[A] state official in his or her official capacity, when sued for injunctive relief, is a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will,* 491 U.S. at 71, n.10 (citing *Kentucky v. Graham,* 473 U.S. 159, 167, n.14 (1985); *Ex parte Young,* 209 U.S. 123, 159-160 (1908)). Even liberally reading Plaintiff's claim for relief (Compl. at 14), he does not seek prospective injunctive or declaratory relief, but rather relief to make him "whole prior to the incident with [GCI]" with respect to money and property lost as a consequence of Defendants alleged constitutional violations while he was at GCI.

omitted). Accordingly, Plaintiff's § 1983 claims against defendants Eppinger, Kastler, Cheers, Gardenhire, Gillece, Armbruster, and Grudzien are frivolous and lack legal plausibility, thereby depriving the court of federal subject matter jurisdiction. *Apple*, 183 F.3d at 479-80.

### *Claims against the State of Ohio*

As already stated, Plaintiff's claims against ODRC and GCI, and the above-listed defendants in their official capacities, are equivalent to claims against the State of Ohio. Plaintiff asks this court to correct the wrongs alleged in the Complaint by reimbursing him for money spent, and property not returned to Plaintiff when he was transferred, and for the court to correct the slander and defamation against him, as well as holding Defendants "accountable" for their alleged constitutional violations. He seeks actual damages in the amount of $8,032.82 and punitive damages in the amount of $250,000.00. (Compl. at 14-15).

For the reasons set forth above, the State of Ohio is immune from suit in federal court for money damages. Moreover, in order for a governmental entity to be liable under § 1983 for the conduct of an employee acting in their official capacity, the employee must have been acting in accordance with some official policy or custom of the State. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Here, Plaintiff alleges that Defendants' conduct with respect to Plaintiff's operation of the Workshop and other charitable activities at GCI was *contrary* to State of Ohio and ODRC policies, and the complaint contains no allegations that a custom or policy of the State of Ohio resulted in the alleged deprivation of Plaintiff's constitutional rights by any individual defendant when he came under scrutiny for his activities. Accordingly, any claim by Plaintiff which is equivalent to a claim against the State of Ohio is frivolous and lacks legal plausibility.

For all of the foregoing reasons, the court dismisses this fee-paid action *sua sponte* without affording Plaintiff the opportunity to amend for the reason that, even liberally construing the complaint, Plaintiff's claims lack legal plausibility and are so totally frivolous and devoid of merit that the court lacks federal subject matter jurisdiction. *Apple*, 183 F.3d at 479-80.

**2. Plaintiff's state law claims are dismissed without prejudice**

Plaintiff's allegations against Defendants for libel, slander, and defamation are state law claims. The court's supplemental jurisdiction over state law claims is governed by 28 U.S.C. § 1367(c), which provides that a district court may decline to exercise supplemental jurisdiction over state law claims when the court has dismissed all of the claims over which the court has original jurisdiction. 28 U.S.C. § 1367(c)(3). Generally, the court should exercise its discretion and decline to hear state law claims when all federal law claims are dismissed before trial. *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724-26 (1966); *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) ("'Under 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. If the federal claims are dismissed before trial, the state claims generally should be dismissed as well.'") (quoting *Wojinicz v. Davis*, 80 F. App'x 382, 384-85 (6th Cir. 2003) (further citation omitted)). Having dismissed all of Plaintiff's federal claims, and seeing no other basis for federal jurisdiction, the court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and those claims are dismissed without prejudice.

### III.  CONCLUSION

For all of the foregoing reasons, Plaintiff's federal claims are dismissed, and his state law claims are dismissed without prejudice.  The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision may not be taken in good faith.

IT IS SO ORDERED.

                                            /s/ Solomon Oliver, Jr.
                                            UNITED STATES DISTRICT JUDGE

June 28, 2019